# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

US Airways, Inc. and Sedgwick : 
Claims Management Services, Inc., : 
                      Petitioners : 
                              : 
          v. : No. 612 C.D. 2017
                              : Submitted:  September 29, 2017
Workers' Compensation Appeal : 
Board (Bockelman), : 
                    Respondent : 

BEFORE:  HONORABLE P. KEVIN BROBSON, Judge
                HONORABLE MICHAEL H. WOJCIK, Judge
                HONORABLE J. WESLEY OLER, JR., Senior Judge

OPINION BY JUDGE BROBSON       FILED:  February 22, 2018

        US Airways, Inc. (Employer) petitions for review of an order of the Workers' Compensation Appeal Board (Board), dated April 19, 2017.  The Board affirmed the order of a Workers' Compensation Judge (WCJ), granting the claim petition of Betty Bockelman (Claimant) based upon the finding that Claimant was injured in the course and scope of her employment as required by Section 301(c)(1) of the Workers' Compensation Act (Act).[1]  We now affirm.

        Claimant worked for Employer as a Philadelphia-based flight attendant. In order to get to work, Claimant drove her own vehicle to the airport and parked in one of the two designated employee parking lots.  Both parking lots are owned, operated, and maintained by the City of Philadelphia/Division of Aviation (DOA), for the use of all airport employees, not just those of Employer.  All airport

---

[1] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. § 411(1).

employees are required to get a secured identification display area (SIDA) badge in order to park in these lots. The DOA issues SIDA badges. Employer pays a one-time administrative fee at the time of an employee's hire to process the background check for the employee to receive a SIDA badge. After an employee parks, a shuttle bus transports the employee from the employee parking lot to the airport terminal (and vice versa). Employer does not own or exercise control over the shuttle buses. Further, Employer does not require employees to use the airport employee parking lots. Employer gives its employees no directive whatsoever in terms of how they should commute to work.

On January 23, 2015, Claimant parked her car in the employee parking lot and rode the employee shuttle bus to the terminal to report for work. (Reproduced Record (R.R.) at 24a-26a.) Employer scheduled Claimant to work a one-day trip from Philadelphia to Miami and back. (*Id.* at 24a.) Claimant's return flight from Miami landed in Philadelphia at approximately 9:47 p.m., and, after a brief discussion with a co-worker, Claimant departed the terminal to the employee shuttle bus stop. (*Id.* at 28a, 42a.) After Claimant boarded the shuttle bus, she attempted to lift her suitcase onto the luggage racks. (*Id.* at 27a.) While trying to place her luggage on the racks, Claimant stepped in water on the floor, causing her right foot to slide out from underneath her. (*Id.*) Claimant's left knee buckled, causing her to fall backwards, crushing her left foot under her. (*Id.*) Claimant felt something rip in her left foot. (*Id.*) Other passengers had to assist Claimant from the floor to a seat. (*Id.*)

On June 2, 2015, Claimant filed a claim petition, alleging that she sustained work-related injuries to her left foot from her January 23, 2015 slip and fall. (*Id.* at 4a.) Employer filed a timely answer, denying that Claimant was within

2

the scope of her employment at the time of her injury. (*Id.* at 9a.) The WCJ held a hearing on October 28, 2015. (*Id.* at 84a.)

In support of her petition, Claimant testified by deposition and presented documentary evidence. In opposition, Employer presented the testimony of Anthony Stanley (Stanley), Director of Planning and Administration for Employer, and documentary evidence.

By decision dated April 27, 2016, the WCJ concluded that Claimant sustained injuries in the course and scope of her employment. (WCJ Decision, attached to Petitioner's brief as "Ex. 1.") Specifically, the WCJ concluded: (1) the injury occurred on Employer's premises; (2) Claimant's presence on the shuttle bus was required by the nature of her employment; and (3) the injury was caused by the condition of the premises. (*Id.*) Employer appealed to the Board, and, by opinion dated April 19, 2017, the Board affirmed. (Board Decision, attached to Petitioner's brief as "Ex. 2.") Employer then petitioned this Court for review.

On appeal,[2] Employer essentially argues that the Board erred as a matter of law in concluding that Claimant was in the course and scope of her employment at the time of her injury. Specifically, Employer argues that the Board erred in concluding that Claimant's injury occurred on Employer's premises, because Employer did not own, lease, or control the shuttle bus and parking lot, and they were not integral to Employer's business. Employer also argues that the Board erred in concluding that Claimant's presence on the bus was required due to her

---

[2] This Court's standard of review is limited to determining whether constitutional rights were violated, whether an error of law was committed, or whether necessary findings of fact are supported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa. C.S. § 704.

employment status, because Employer never required Claimant to use the shuttle bus.

Pursuant to Section 301(c)(1) of the Act, an injury is compensable if it "(1) arises in the course of employment and (2) is causally related thereto." *U.S. Airways v. Workers' Comp. Appeal Bd. (Dixon)*, 764 A.2d 635, 640 (Pa. Cmwlth. 2000), *appeal denied*, 788 A.2d 382 (Pa. 2001). Injuries may arise in the course of employment in two distinct situations:

> (1) where the employee is injured on or off the employer's premises, while actually engaged in furtherance of the employer's business or affairs; or (2) where the employee, although not actually engaged in the furtherance of the employer's business or affairs, (a) is on the premises occupied or under the control of the employer, or upon which the employer's business or affairs are being carried on, (b) is required by the nature of his employment to be present on the employer's premises, and (c) sustains injuries caused by the condition of the premises or by operation of the employer's business or affairs thereon.

*Id.*

As there is no dispute that Claimant was not actually engaged in the furtherance of Employer's business, Claimant's injury is compensable under the Act if she establishes that (1) the injury occurred on Employer's premises, (2) Claimant's presence thereon was required by the nature of her employment, and (3) the injury was caused by the condition of the premises or by operation of Employer's business thereon. *See Workmen's Comp. Appeal Bd. (Slaugenhaupt) v. United States Steel Corp.*, 376 A.2d 271, 273 (Pa. Cmwlth. 1977). It is undisputed that Claimant has established the third prong of the *Slaugenhaupt* test.

4

First, we address Employer's argument that focuses on the disputed first prong of the *Slaugenhaupt* test—that the injury occurred on Employer's premises. Employer contends that Claimant cannot establish that she was injured on Employer's premises because (1) Employer never owned, leased, maintained, or controlled the shuttle bus, and (2) the shuttle bus does not comprise an integral part of Employer's business because Employer did not cause Claimant to be there.

In construing the term "premises" as contemplated by Section 301(c)(1) of the Act, the determinative question is whether the site of the accident is so connected with the employer's business as to form an integral part thereof. *Epler v. N. Am. Rockwell Corp.*, 393 A.2d 1163, 1166-67 (Pa. 1978). In this analysis, "the critical factor is not the employer's title to or control over the area, but rather the fact that . . . [the employer] had caused the area to be used by . . . employees in performance of their assigned tasks."[3] *Id.* at 1167. Further, this Court has held that reasonable means of access to the workplace is considered an integral part of the employer's business, and, therefore, is part of the employer's "premises." *Newhouse v. Workmen's Comp. Appeal Bd. (Harris Cleaning Serv., Inc.)*, 530 A.2d 545, 546-47 (Pa. Cmwlth. 1987), *appeal denied*, 538 A.2d 879 (Pa. 1988). Thus, Employer's contention that the shuttle bus could not be part of its premises because it did not own, lease, maintain, or control the shuttle bus is not dispositive of whether the shuttle bus was part of Employer's premises.

Our courts have held that an employer's premises includes reasonable means of access to the workplace, whether or not the employer owns the land. *See Newhouse*, 530 A.2d at 546-47. Further, an employer's premises is property that

---

[3] While the question of whether an employer required a claimant to be at the location of injury constitutes a separate and distinct prong of the *Slaugenhaupt* test, it may also be a factor considered when determining whether an area is part of an employer's premises.

"could be considered an integral part of the employer's business." *Ortt v. Workers' Comp. Appeal Bd. (PPL Servs., Corp.)*, 874 A.2d 1264, 1267 (Pa. Cmwlth. 2005). Property becomes integral to an employer's business when the employer causes employees to be in the area. *Epler*, 393 A.2d at 1167.

A means of access customarily used by employees for ingress and egress can be such an integral part of an employer's business as to be considered part of the premises. In *Interstate United Corporation v. Workmen's Compensation Appeal Board*, 424 A.2d 1015 (Pa. Cmwlth. 1981), the claimant worked as a cafeteria worker inside of a plant. The employer leased the cafeteria from the plant owner. *Interstate United Corp.*, 424 A.2d at 1016. The claimant sustained injuries after falling on the steps of a footbridge that connected the plant to a public street. *Id.* The plant owner, not the employer, owned and controlled the footbridge. *Id.* This Court, in concluding that the footbridge comprised the employer's premises for the purposes of the Act, opined:

> [T]he record shows that [employer's] cafeteria was located in the interior of the . . . plant, that employees customarily crossed the footbridge the claimant was injured on to enter and exit the cafeteria area, and that [employer] was aware of this fact. In numerous cases Pennsylvania Courts have held that a reasonable means of access to the situs of an employer's business operation is such an integral part of an employer's business as to be encompassed within the definition of "premises" as that term is used in Section 301(c)(1) of the Act.

*Id.* at 1017.

Also instructive to our analysis is this Court's holding in *Fashion Hosiery Shops v. Workmen's Compensation Appeal Board*, 423 A.2d 792 (Pa. Cmwlth. 1980). In *Fashion Hosiery Shops*, a claimant sustained injuries after she fell while approaching an entrance to her workplace. *Fashion Hosiery Shops*,

6

423 A.2d at 794. The employer had three separate points of entry and indicated no preference to claimant as to which entry point to utilize. *Id.* at 793-94. The employer did not own, lease, or control the walkway upon which the claimant fell. *Id.* at 797. On appeal to this Court, the employer essentially argued that the claimant's injury did not occur on employer's premises because the claimant had multiple means of entry to the workplace, and the employer did not instruct her to utilize any specific one. *Id.* at 794. In determining that the walkway comprised the employer's premises, we found no significance in the fact that the employer did not require claimant to use a specific entry to the workplace. *Id.* at 797. In so holding, we opined:

> Given the relational nature of the area in question to the employer's place of business, it must be concluded that the claimant was injured on an entranceway that was available and intended for her use; and as such, it constituted part of the employer's premises, regardless of its not being owned or controlled by the employer. Nor does the availability of alternative entrances nullify that conclusion. Each of the three available and intended ways of ingress to Fashion's shop was a part of Fashion's "premises" for purposes of Section 301(c) of the Workmen's Compensation Act.

*Id.*

The instant case is analogous to both *Interstate United Corporation* and *Fashion Hosiery Shops*. Claimant used the airport parking lot and shuttle bus to enter and exit the workplace. (R.R. at 11a-12a.) It is undisputed that Employer does not own or exercise control over the parking and shuttle services. Claimant uses the shuttle bus as a customary means of ingress and egress, much like the claimants in *Interstate United Corporation* and *Fashion Hosiery Shops* utilized the footbridge and walkway. Claimant used her vehicle as her means of transportation to work, and the airport provided employees who work at the airport, including Claimant,

with parking at no cost in employee parking lots designated by the airport. (*Id.* at 73a.) In order to get from the parking lot to the terminal, Claimant rode the shuttle bus provided by the airport to transport employees to and from its parking lots and terminal. As part of doing business with the airport, Employer understood that the airport would transport Employer's employees who drove to work. Thus, Employer also understood that, in order to arrive at their work area to start their shift, employees who drive to work invariably board the shuttle bus after their commute to the airport. Similarly, Employer also understood that, in order to leave their work area at the end of their shift, employees who drive to work invariably board the shuttle bus to return to their vehicle. Accordingly, the shuttle bus is such an integral part of Employer's business as to be part of the premises, in addition to being a customary means of ingress and egress, and the WCJ correctly concluded as such.

Having concluded that Claimant met the first prong of the *Slaugenhaupt* test—that the injury occurred on Employer's premises, we now turn our focus to the disputed second prong of the *Slaugenhaupt* test—that the nature of Claimant's employment required her to be on Employer's premises where she was injured. Employer essentially argues that Claimant's presence on the shuttle bus was not required, as Employer gave her no directive on where to park, and, accordingly, Employer did not require Claimant to board the shuttle bus.

In *ICT Group v. Workers' Compensation Appeal Board (Churchray-Woytunick)*, 995 A.2d 927 (Pa. Cmwlth. 2010), this Court considered whether a claimant who sustained an injury from slipping on ice on her employer's premises when leaving for her lunch break was injured within the course of her employment. With regard to the second prong of the *Slaugenhaupt* test, the employer argued that the nature of the claimant's employment did not *require* her to

8

be present in the parking lot during her lunch break, and, therefore, she was not injured in the course and scope of her employment. The employer took this position because the claimant had started her lunch break and had independently decided to leave the employer's premises at that time. We placed no significance on the fact that the claimant had "independently" decided to leave the building during her lunch break when we concluded that the claimant's presence was required by the nature of her employment. In reaching that conclusion, we applied the same rule applicable to situations where the employee is arriving at the workplace to commence the workday or departing from the workplace at the completion of the workday—that "any injury occurring to an employee up until the time he leaves the premises of the employer, provided that it is reasonably proximate to work hours, is compensable." *ICT Group*, 995 A.2d at 932 (quoting *Epler*, 393 A.2d at 1166). We observed that "[t]he rationale behind this rule is that 'once an employee is on the [e]mployer's premises, actually getting to or leaving the employee's work station is a necessary part of employee's employment.'"[4] *Id.* (quoting *Allegheny Ludlum Corp. v. Workers' Comp. Appeal Bd. (Hines)*, 913 A.2d 345, 349 (Pa. Cmwlth. 2006), *appeal denied*, 932 A.2d 77 (Pa. 2007)). Because the claimant was still in the process of walking from her work station to her car at the time of her injury, the Court determined that "her presence on [the e]mployer's premises remained so connected

---

[4] Pennsylvania courts have found that a claimant's presence is not "required" on an employer's premises if her presence does not occur within a reasonable time before or after her work shift or if the claimant is in an area unrelated to her work. *See Heverly v. Workmen's Comp. Appeal Bd. (Ship N Shore)*, 578 A.2d 575 (Pa. Cmwlth. 1990) (holding claimant's presence not required for the purposes of Section 301(c)(1) of the Act after leaving work for the day and sustaining an injury upon returning later to retrieve her eyeglasses); *see also Giebel v. Workmen's Comp. Appeal Bd.*, 399 A.2d 152 (Pa. Cmwlth. 1979) (holding claimant's presence not required in different part of department store from part in which she worked). The instant case, however, does not implicate *Heverly* or *Giebel*.

9

to the employment relationship that it was required by the nature of her employment." *Id.*

Here, Claimant's presence on the shuttle bus was a necessary part of her employment, because it was the means by which she traversed between her work station (*i.e.*, the terminal) and the parking lot designated for airport employees. As found by the WCJ, the shuttle bus is "specifically designated as an employee bus to travel from the terminal to the [employee] parking lot."[5] (WCJ Decision, attached to Petitioner's brief as "Ex. 2.") Claimant's utilization of the shuttle bus service was expected, so long as she elected to drive to work. Claimant's presence on the shuttle bus, therefore, was so connected to her employment relationship that it was required by the nature of her employment, and the WCJ did not err in concluding as such. The absence of a directive by Employer instructing Claimant to utilize the shuttle bus does not alter this analysis, just as the fact that the claimant in *ICT Group* independently decided to leave the building during her lunch break, without instruction or a directive by employer, did not alter the analysis in that case.

---

[5] We also note that there is no record evidence to indicate that Claimant would have been able to walk from the airport terminal to the employee parking lot. Even if such evidence existed, it would not alter the outcome of this matter.

Accordingly, the order of the Board is affirmed.


_____
P. KEVIN BROBSON, Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

US Airways, Inc. and Sedgwick
Claims Management Services, Inc.,
      Petitioners

    v.

Workers' Compensation Appeal
Board (Bockelman),
      Respondent

:
:
:
:
:
:   No. 612 C.D. 2017
:
:
:
:

# *O R D E R*

   AND NOW, this 22nd day of February, 2018, the order of the Workers'
Compensation Appeal Board, is AFFIRMED.

         _____
         P. KEVIN BROBSON, Judge